OPINION
In November of 1997, the defendant, Adrian A. Bizzell, met Angelia Beaty, and they began to date from time to time, and in February of 1998, Bizzell began to stay at Beaty's house on Danner Avenue in Dayton, Ohio, where she lived with her son, Joshua, her daughter, Barbara, and her mother, Beverly Workman. Thereafter, the defendant developed a relationship with nine-year-old Barbara, and between the dates of May 18, 1998 and May 30, 1998, he allegedly sexually assaulted her in the basement of the Danner Avenue residence.
In this appeal, the assignments of error do not depend upon the sordid details disclosed by the evidence, but the record shows that Bizzell was indicted upon three counts of rape in violation of R.C. 2907.02(A)(1)(b) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). Following a trial on the charges, a jury found the defendant not guilty of one of the rape charges and another of the rape charges was dismissed by the trial court. However, the jury was unable to reach a verdict as to the other rape charge or the gross sexual imposition count of the indictment.
Subsequently, a second trial was held on the rape and gross sexual imposition charges, after which the jury found Bizzell guilty of gross sexual imposition, but was unable to reach a verdict on the remaining rape charge. The State therefore filed a bill of information as to the rape charge, but such charge was subsequently dismissed after the defendant entered a no contest plea to gross sexual imposition.
After entering a finding of guilty upon the no contest plea, the trial court sentenced the defendant to a four year term of incarceration to be served concurrently with the sentence previously ordered to be served upon the jury verdict of guilty. And from the judgment and sentence so entered in the Court of Common Pleas, the appellant has filed a notice of appeal to this court.
In this court, the appellant has set forth four assignments of error, the first of which has been stated as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED DEFENDANT-APPELLANT'S CHANGE OF PLEA TO GUILTY ON THE GROUND THAT SUCH CHANGE OF PLEA WAS INVOLUNTARY UNDER THE CIRCUMSTANCES.
 As heretofore indicated, Bizzell entered a plea of no contest to gross sexual imposition as charged by bill of information in exchange for the State's dismissal of a count of the indictment charging rape, and the record affirmatively shows that the trial court was careful, thorough, and patient in determining that the appellant entered his plea knowingly and voluntarily, and with a full understanding of the effect of the plea.
Among other things, the trial court advised Mr. Bizzell that he was waiving his rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, to have the State prove his guilt beyond a reasonable doubt, and to not be compelled to testify against himself. In addition, the court explained the nature of the charges, the maximum sentence that could be imposed, and that the court would proceed to sentencing once it had accepted the plea.
Furthermore, the trial court ascertained that Bizzell could read and write, was not under the influence of drugs or alcohol, and that the plea was not the product of threats, promises, offers, or undue influence. On the contrary, the record shows that the trial court reminded the appellant on more than one occasion that he could abandon his agreement and proceed to trial on the original charge.
Unlike the case of State v. Byrd (1980), 63 Ohio St.2d 288, as relied upon by the appellant, the intervention of the trial court in this case was more protective than coercive, and nothing appears to suggest that any participation of the court affected the voluntariness of the plea. Moreover, the appellant in this case concedes, and the record demonstrates, that the trial court fully complied with the requirements of Crim.R. 11(C)(2). Based upon all of the evidence presented at the hearing conducted on September 28, 1999, therefore, the first assignment of error is overruled.
The second and third assignments of error, which raise substantially the same issue, have been presented by the appellant as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO DEFENDANT-APPELLANT'S PREJUDICE ON THE GROUNDS THAT THE TRIAL COURT ALLOWED EVERY MEMBER OF THE JURY TO SEE HIM IN SHACKLES IN OPEN COURT AFTER ENTERING JUDGMENT ON ONE COUNT BUT BEFORE ENTERING JUDGMENT ON ANOTHER COUNT.
 DEFENDANT-APPELLANT'S RIGHT TO AN IMPARTIAL JURY WAS PREJUDICED WHEN THE TRIAL COURT ALLOWED EVERY MEMBER OF THE JURY TO SEE HIM IN SHACKLES IN OPEN COURT AFTER ENTERING JUDGMENT ON ONE COUNT BUT BEFORE ENTERING JUDGMENT ON ANOTHER COUNT.
 Ordinarily, and for obvious reasons, a criminal defendant carrying a presumption of innocence is entitled to appear in court without shackles. State v. Morgan (1992), 84 Ohio App.3d 229. However, a defendant's own conduct sometimes amounts to a waiver of the right to be free from any restraint during the course of a trial. See State v. Brandle
(1996), 116 Ohio App.3d 753. See, also, Illinois v. Allen (1970), 397 U.S. 337, 90 S.Ct. 1057. As stated in State v. Carter
(1977), 53 Ohio App.2d 125, "a defendant in a criminal case has the right to appear at trial without shackles or other physical restraint except when the court, in the exercise of a sound discretion, determines such restraint is necessary for a safe and orderly progress of the trial."
In the present case, the appellant was not shackled or handcuffed during the course of the trial, but only for the reading of the verdict, at which time the jury had already determined that Bizzell was guilty of gross sexual imposition. Similarly, the jury had already concluded at that time that it was unable to reach a unanimous verdict on the rape charge.
However, Mr. Bizzell did appear in shackles and handcuffs as the trial court gave further instructions to the jury as to the rape charge, which instructions concluded as follows:
 Now, it is customary for the court to inquire if there is a possibility of reaching an agreement within a reasonable time. At this time, what I'm going to do is this. I'm going to ask you to all go back to the jury room to answer one simple question, and it — I can't imagine that it will take very long for you to decide on this, and that is this. Is there a possibility that after an additional period of time you may reach an agreement? That is the only question submitted to you at this time.
 I would ask you to go back and deliberate on that question, and that question only, and report back here in due course — and I'm thinking in the next five or ten minutes to give me an answer to that question. Then, we will make a decision on what to do. So, at this time I will allow you to return back to the jury room to deliberate on that one question. Thank you.
 During the subsequent absence of the jury, the trial court stated its reasons for restraining the appellant with shackles and handcuffs as follows:
 So, the information provided to me is that Mr. Bizzell was refusing to leave his cell. A court order was needed to have him removed from his cell. That court order was issued. It was then advi . . . I was then advised that he was placed in the clothes he appears in here today, but while in the holding cell to be brought over here, he removed all his clothes, as I guess — the only thing I can assume is a — is a protest in the — in that holding cell.
 Because of those actions and because I realized that a verdict — some verdict, was going to be announced in court, and the danger of that is always somewhat of a problem, the court ordered that the defendant be brought over here in shackles and handcuffs. And the court's gonna order that the defendant remain in shackles and handcuffs until we resolve this last issue with the jury.
 At the conclusion of this explanation, the State informed the court that the deputies who observed appellant's actions in the holding cell were present in the courtroom and available for testimony if the appellant wanted to conduct a hearing, but trial counsel for appellant indicated that a hearing was not necessary. Furthermore, counsel stated that he had no reason to dispute the representations of the court as given.
The facts of record affirmatively show, therefore, that some form of restraint or control was necessary to effectuate the orderly progress of the trial, and this court is not in a position to say that the action taken by the trial court constituted an "abuse of discretion," as that term is defined in law. By any standards, the appellant's own conduct precipitated the need for decisive action, and nothing projects from the record to suggest that the procedure adopted by the trial court, under the circumstances, was "unreasonable, arbitrary, or unconscionable."
However, since the second and third assignments of error present an issue of constitutional dimension, we have particularly noted from the record that the shackles and handcuffs did not appear in this case until after the jury had rendered its verdict. At that point, the presumption of innocence as to the gross sexual imposition charge had been overcome and the presumption of innocence as to the rape charge remained intact. In fact, the only possible influence which the restraints may have had upon the jury related to the single question presented by the trial court as to whether there was any possibility of reaching a verdict on the rape charge. And as to the minimal and remote possibility that the jury would have gone beyond the specific instructions, reconsidered the evidence, and found Bizzell not guilty of the rape charge, we are of the opinion that any such claimed error would have been harmless beyond a reasonable doubt. See Chapmanv. California (1967), 386 U.S. 18, 87 S.Ct. 824. Accordingly, the second and third assignments of error are overruled.
The fourth assignment of error, as submitted by the appellant, is as follows:
 THE JURY'S VERDICT FINDING DEFENDANT-APPELLANT GUILTY AS TO THE CHARGE OF GROSS SEXUAL IMPOSITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In this regard, R.C. 2907.05(A)(4) merely provides that no person shall have sexual contact with another when the other person is less than thirteen years of age, and sexual contact is defined by R.C. 2907.01(B) as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or breast, for the purpose of sexually arousing or gratifying either person.
In this context, the composite evidence presented by the State, as well as the inferences deducible therefrom, if believed by the trier of the facts, were sufficient to prove the essential elements of the crime beyond a reasonable doubt. See State v.Jenks (1991), 61 Ohio St.3d 259. Here, the testimony of the child was corroborated by other significant evidence, and while the appellant denied his involvement, it is nonetheless fundamental that the opinion of a reviewing court has no force against conflicting evidence and inferences. State v. Martin (1983),20 Ohio App.3d 172; State v. DeHass (1967),10 Ohio St.2d 230. See, also, State v. Thompkins (1997),78 Ohio St.3d 380. In this case, as in most criminal cases involving sexual conduct, credibility apparently played a major role, but the record fails to show that the jury lost its way or created a manifest miscarriage of justice. Hence, the fourth assignment is overruled.
Finding no prejudicial error in the proceedings, the judgment of the Common Pleas Court will be affirmed.
BROGAN, J., and FAIN, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).