[Cite as *State v. Dickey*, 2025-Ohio-4397.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250022 |
| | | TRIAL NO. B-2301082 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| DWAYNE DICKEY, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 9/19/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Dickey*, 2025-Ohio-4397.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250022 |
| | | TRIAL NO. | B-2301082 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| DWAYNE DICKEY, | : | | |
| Defendant-Appellant. | : | | |

Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: September 19, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Adanalian,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser*, for Defendant-Appellant.

**CROUSE, Judge.**

**{¶1}** The law is well-settled that a plea is not valid unless it is entered knowingly, voluntarily, and intelligently. Defendant-appellant Dwayne Dickey argues that his no-contest pleas were rendered invalid by the trial court's participation in the plea-bargaining process. He contends that the trial court's imposition of a greater sentence than it had promised to impose during plea negotiations resulted in him entering pleas that were not knowing, voluntary, or intelligent.

**{¶2}** Following our review of the record, we hold that the trial court made no promise to impose a specific sentence and that Dickey's pleas were not rendered invalid by the trial court's participation in the plea-bargaining process.

**{¶3}** We accordingly affirm the trial court's judgment, but we remand for the trial court to correct a clerical error in its sentencing entry that Dickey has identified.

## I. Factual and Procedural History

**{¶4}** An indictment was issued on March 14, 2023, charging defendant-appellant Dwayne Dickey with felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); aggravated burglary, a first-degree felony in violation of R.C. 2911.11(A)(1); having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13(A)(3); and cruel treatment against companion animals, a fifth-degree felony in violation of R.C. 959.131(C). Counts 1 and 2, charging Dickey with felonious assault and aggravated burglary, each carried two accompanying firearm specifications.

**{¶5}** On April 3, 2023, Dickey's counsel filed a suggestion of incompetency. Dickey was evaluated, and after reviewing the ensuing competency report, the trial court issued an entry on May 8, 2023, finding Dickey competent to stand trial.

**{¶6}** On May 12, 2023, Dickey entered a plea of not guilty by reason of

insanity.

**{¶7}** The parties appeared before the court on October 5, 2023. The State told the trial court that it had reached an agreed plea resolution with Dickey. The State indicated that, per the terms of the parties' agreement,

> [Dickey] would be pleading to Count 1, felonious assault, a felony of the second degree; and would also be pleading to Specification 2 to Count 1, the three-year gun specification.
>
> With a plea to those two, the State would move to dismiss, per plea, Specification 1 to Count 1. The State would also move to dismiss Count 2 in its entirety—that's the original charge—as well as both Specifications 1 and 2.
>
> Defendant would also be pleading to Count 3 as charged, having weapons while under disability, a felony of the third degree.
>
> The defendant would also be pleading to Count 4 as charged, cruel treatment against companion animals, a felony of the fifth degree.
>
> Judge, we have a proposed agreed sentence. That would be 12 years in the Ohio Department of Corrections, up to 15 years as there is a Reagan Tokes charge on Count 1.

**{¶8}** The trial court asked Dickey if he wished to go forward with these pleas, and Dickey answered, "Yes, I guess." The court responded, "Well, 'I guess' isn't a 'yes,' and it isn't 'no.'" The trial court assured Dickey that "[i]t doesn't matter to me whether you plead guilty or you don't. I don't care. I literally do not care." The court explained to Dickey that its role was to make sure that his pleas were entered knowingly, and it asked Dickey if he would like a trial on these matters. Dickey started to question the court on the charges that he faced. After attempting to answer Dickey's questions, the

trial court told Dickey that it was detecting some hesitancy on Dickey's part, and that it was going to continue the matter. Before concluding the hearing, the court reiterated that it would gladly conduct a trial if Dickey desired to have one.

{¶9} Dickey returned to court on October 12, 2023. The trial court asked the parties to confirm that a plea offer was made by the State. Defense counsel answered, "Judge, that is correct, and we have tendered a signed plea form which Mr. Dickey and I reviewed on multiple occasions. However, Mr. Dickey advises me this morning that he does not wish to proceed with the plea." The trial court told the parties that the matter would be scheduled for trial. Dickey then spoke up and stated that he wanted to enter a plea. The trial court told Dickey,

> I want to clarify something, Mr. Dickey. It does not matter if you take this plea or you don't. It's your decision. Okay? So my responsibility is to make sure that if you do this plea and you accept this plea, you did it knowingly and you knew full well what you agree to. All right? And voluntarily. No one is making you do it. Leaning on you to do it. Right?

{¶10} In response, Dickey told the trial court that he felt pressured to take the offered pleas and sentences. The trial court then stated that the matter would be set for trial.

{¶11} In December 2023, Dickey obtained new counsel. After his new counsel made an oral motion suggesting that Dickey was incompetent, the trial court ordered that Dickey undergo a second competency evaluation. In January 2024, after reviewing the second competency report, the trial court issued an entry finding Dickey incompetent to stand trial and ordering that he undergo treatment at Summit Behavioral Healthcare.

{¶12} Counsel for the State and Dickey appeared before the trial court on July

16, 2024. The trial court stated that it had received a report from Summit indicating that Dickey had not been cooperative in the restoration process and that he may be malingering. The court ordered an independent examiner to evaluate Dickey's competency. After reviewing the examiner's report, the trial court issued an entry finding Dickey competent to stand trial.

**{¶13}** At a hearing on October 21, 2024, defense counsel represented that after speaking with Dickey numerous times, counsel was under the impression that Dickey intended to enter a plea at the hearing. However, counsel elaborated,

> His major—if you want to call it—"hangup" is the fact that there is a felonious assault. That count cannot be merged, and the State is not willing to dismiss that, and he has some issues with that.
>
> I talked to him again this morning about the fact that we would be doing an open plea, and then the State indicated that they wouldn't dismiss any of the counts.
>
> I went over all of that with him. Again, Mr. Dickey indicated to me that he did not want to sign any documents. He said he didn't know what he was signing.
>
> I went through everything with him another time. And then he had stated he was willing to plea to Counts 2, 3, and 4 at that time, but not Number 1.

**{¶14}** The trial court told Dickey that "this sounds remarkably like the last time you were here, and you were entertaining whether or not you wanted to plea [sic]." It reiterated to Dickey that the role of the court was to make sure any waiver of his rights was voluntary. The court stated its belief that Dickey was malingering and deliberately wasting the court's time and that the charges would be scheduled for trial.

6

**{¶15}** On November 18, 2024, the parties again appeared before the court. Defense counsel stated that Dickey had indicated "a potential willingness to enter the no contest plea." The trial court proceeded to ask Dickey a series of questions to ascertain whether his change of plea was voluntary. During this colloquy, when asked if the penalties that he faced for each charge had been explained to him, Dickey responded, "I didn't know what I was doing. I don't know. I still don't know." The court asked Dickey if he was referring to his understanding of the plea form or to his actions on the night that the offenses were committed. Dickey responded, "Both." The trial court then stated,

> Mr. Dickey, we have been over this multiple times. The only way you can even plea[d] no contest to these charges is if the Court determines that it is a knowing and voluntary change of plea.
>
> I have a finding for competency, which indicates you can aid in your own defense.
>
> I have nothing before me—quite the opposite. I have quite a bit based on my interactions to indicate you are, in fact, aware of what is going on and you can aid in your defense.
>
> Whether you choose to or not is entirely your choice, but if you want to sit there with [defense counsel] tomorrow—because the jury is still coming in. It's too late to call them off.
>
> So do you want to take this plea, or do you want to pick a jury tomorrow?
>
> Doesn't matter to me, but you need to explain to me succinctly and definitely that this is a knowing and voluntary change of plea.
>
> And, Mr. Dickey, if the record doesn't reflect it, I'm getting rather

impatient with your game playing.

Do you want to take this plea or will you be sitting in that chair tomorrow and it will be going to trial?

**{¶16}** An off-the-record discussion then took place between Dickey and his counsel, after which Dickey indicated that he wished to enter no-contest pleas to the charged offenses. The trial court engaged in a Crim.R. 11 colloquy with Dickey to ensure that he was entering the pleas knowingly, voluntarily, and intelligently. During the colloquy, the trial court asked Dickey if he had any trouble understanding the plea form. After Dickey responded "yes" two times, the trial court instructed a deputy to return Dickey to the Justice Center and stated that a trial would begin the next day.

**{¶17}** Defense counsel intervened, explaining to the court that Dickey initially had not understood the plea form, but that Dickey had discussed it with counsel and currently understood its terms. The trial court accepted counsel's explanation and proceeded with the plea colloquy.

**{¶18}** The court informed Dickey of the effects of a no-contest plea, explained the rights that would be waived if a plea were entered, and discussed the penalties that Dickey faced for each offense. It then asked Dickey, "And you understand there's no promise of a particular sentence, and the Court could proceed with judgment and sentence you immediately after your plea? Do you understand that?" Dickey responded affirmatively, and the trial court ultimately accepted his no-contest pleas to the offenses as charged.

**{¶19}** The parties returned to court for sentencing on December 16, 2024. At the hearing, the trial court noted that Dickey had caused serious psychological harm to the victim and serious physical harm to the victim's dog, that this was a stranger-upon-stranger crime involving a firearm, that Dickey's actions constituted the worst

8

forms of the offenses, and that the behavioral treatment center believed that Dickey was malingering. The trial court also discussed Dickey's prior criminal record, which included convictions for possession of drugs and criminal trespass.

{¶20} The trial court imposed an aggregate sentence of 18 to 23.5 years of imprisonment. After sentence was imposed, defense counsel requested to approach the bench. Following an off-the-record sidebar, Dickey's counsel stated,

> [T]here had been pretrial discussions, negotiations with the State. They were somewhere in the range of—you can correct me—12 to 14 years.
>
> There [were] in-chamber conversations with the Court and the State where there was some indication that if Mr. Dickey pled open, that the sentence would very likely be less than what the State was offering at the time.
>
> I made these representations to Mr. Dickey. I know he factored those into his ultimate decision to resolve this by way of a plea. I just wanted to put that on the record for purposes of any appeal that may be filed.

{¶21} The trial court responded, stating that it had made no promises regarding the sentence to be imposed and had not agreed to a recommended sentence. The court also stated that it had "arrived at the sentence after a careful examination of the record and all submissions by the parties in the case."

{¶22} Dickey now appeals.

## II. Trial Court's Participation in Plea-Bargaining Process

{¶23} Dickey argues in his first assignment of error that the trial court's participation in the plea process rendered his pleas invalid. He contends that the trial

court had represented that he would receive a lesser sentence than what was offered by the State during plea negotiations, but that it ultimately imposed a much longer sentence.

**{¶24}** "'Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid.'" *State v. Gowdy*, 2024-Ohio-1765, ¶ 28 (1st Dist.), quoting *State v. Bishop*, 2018-Ohio-5132, ¶ 10. To ensure that a plea to a felony offense is entered knowingly, intelligently, and voluntarily, a trial court must comply with Crim.R. 11(C). But even if a trial court otherwise complies with Crim.R. 11(C), a plea that is "induced by promises, threats, or coercion" is involuntary. *Gowdy* at ¶ 28.

**{¶25}** The Ohio Supreme Court has recognized that "[a] judge's participation in the actual bargaining process presents a high potential for coercion." *State v. Byrd*, 63 Ohio St.2d 288, 292 (1980). This potential for coercion is so strong that the Federal Rules of Criminal Procedure entirely prohibit a court's participation in the plea process. *See id.* at 293 (recognizing that the federal rule "forbids judge participation in the bargaining process"); Fed.R.Crim.P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions.").

**{¶26}** While Ohio does not have a similar prohibition on a trial court's involvement in plea negotiations, because of the potential for coercion that the court's involvement presents, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Byrd* at 293.

**{¶27}** Where a trial court promised a lesser sentence than it ultimately imposed, courts have found pleas to be involuntary. *See State v. Elcess*, 2023-Ohio-

2820, ¶ 13 (12th Dist.), quoting *State v. Bonnell*, 2002-Ohio-5882, ¶ 18 (12th Dist.) ("When a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary." [Cleaned up.]); *accord State v. Farraj*, 2009-Ohio-1796, ¶ 8 (8th Dist.).

**{¶28}** Here, after sentences were imposed, defense counsel stated, "There [were] in-chamber conversations with the Court and the State where there was some indication that if Mr. Dickey pled open, that the sentence would very likely be less than what the State was offering at the time." Counsel further stated, "I made these representations to Mr. Dickey. I know he factored those into his ultimate decision to resolve this by way of a plea."

**{¶29}** From counsel's comments, we can discern that the trial court was involved in the plea-bargaining process. However, the actual in-chambers conversation in which a potential sentence was discussed was not transcribed or summarized for the record for our review.

**{¶30}** But even if we accept defense counsel's description of the trial court's statements during the in-chambers conversation as true and accurate, the record does not establish that the trial court promised a lesser sentence to Dickey than it ultimately imposed. Defense counsel stated that the trial court gave "some indication" that the imposed sentence would "very likely be less" than the sentence offered by the State during plea negotiations. "Some indication" is not the equivalent of a promise; it does not establish that the trial court guaranteed or bound itself to the imposition of a particular sentence. And a statement that the sentence would "very likely be less" is not the equivalent of stating that the sentence *would be* less. Without a promise by the trial court, there was no inducement to enter the pleas. *See Elcess*, 2023-Ohio-2820 at ¶ 13 (12th Dist.).

{¶31}  Further, the trial court refuted defense counsel's allegations. It stated that it had made no promises regarding sentencing and had not agreed to a recommended sentence. The record not only fails to establish that the trial court promised to impose a particular sentence, but it shows that the trial court went to great lengths to ensure that Dickey's pleas were entered knowingly, intelligently, and voluntarily. The trial court exhibited extreme patience with Dickey throughout these proceedings, repeatedly ensuring that Dickey was aware that the court was more than willing to grant Dickey a trial and continuing the matter when Dickey showed hesitancy regarding an offered plea.

{¶32}  We accordingly hold that any involvement by the trial court in the plea-bargaining process did not render Dickey's pleas involuntary or invalid. The first assignment of error is overruled.

### III.  Clerical Error in Sentencing Entry

{¶33}  Dickey argues in his second assignment of error that the trial court's sentencing entry "incorrectly attached a sentence on the 2nd firearm specification to the wrong count." He points out that the sentencing entry reflects that one of the firearm specifications to which Dickey pled no contest was attached to Count 3, when it was actually attached to Count 2.

{¶34}  The State concedes that the sentencing entry contains this clerical error. Both Dickey and the State ask us to direct the trial court to correct this error through use of a nunc pro tunc entry.

{¶35}  The purpose of a nunc pro tunc entry is to reflect "what a court 'actually decided, not what the court might or should have decided or what the court intended to decide.'" *State v. Ware*, 2014-Ohio-5201, ¶ 16, quoting *State ex rel. Fogle v. Steiner*, 1995-Ohio-278, ¶ 22. A nun pro tunc entry is "limited to the subsequent recording of

a judicial action previously and actually taken." (Cleaned up.) *Miller v. Watkins*, 2004-Ohio-3132, ¶ 6 (1st Dist.).

**{¶36}** The sentencing entry imposed a sentence for the offense of felonious assault in Count 1 and aggravated burglary in Count 2. It also imposed mandatory three-year sentences on the second firearm specifications attached to those counts and accurately reflected that the specifications were attached to Counts 1 and 2.

**{¶37}** The error identified by the parties occurred in a later portion of the entry. After imposing sentences for each individual offense, the sentencing entry set forth whether those sentences were to be served consecutively or concurrently. It provided that "the sentences in specification 2 in counts 1 and 3 are to be served consecutively." This was a clerical error, as there were no specifications accompanying Count 3, and the sentencing entry otherwise reflected that the specifications were attached to Counts 1 and 2.

**{¶38}** We agree with the parties that this error may be corrected through a nunc pro tunc entry. We accordingly sustain Dickey's second assignment of error and remand this cause for the trial court to correct the clerical error in the sentencing entry. The judgment of the trial court is otherwise affirmed.

Judgment affirmed and cause remanded.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.